

# The Attorney General of Texas

January 21, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Warren G. Harding
State Treasurer
L.B.J. Building
Austin, Texas    78711

Opinion No. MW-429

Re:    Constitutionality    of
statute authorizing participa-
tion of the permanent and
available school fund in a
stock and bond loan program

Dear Mr. Harding:

You request an opinion regarding Senate Bill No. 883 enacted by the Sixty-sixth Legislature. Your questions concern the construction of this enactment and its constitutionality in certain respects.

Senate Bill No. 883 amended chapter 15 of the Education Code, which governs the investment of the public school funds. The public school funds consist of the permanent school fund, established by article VII, section 5 of the Texas Constitution, and the interest thereon, known as the available school fund. See Educ. Code §15.01 (composition of permanent and available school funds). The State Board of Education is authorized to invest the permanent school fund in accordance with section 15.02 of the Education Code.

Senate Bill No. 883 enacted section 15.13 of the Education Code which provides in part:

> The State Board of Education is authorized
> and empowered to contract with a commercial bank
> or banks to receive payments of dividends and
> interest on securities in which the state
> permanent school funds are invested and to
> transmit such money with identification of their
> source to the state treasurer for the account of
> the available school fund by the fastest available
> means.

Educ. Code §15.13(a). Under this provision, the State Board of Education may permit a bank to receive payment as a collecting agent of dividends and interest on permanent fund securities and transmit them by wire to the state treasurer. Bill analysis on Senate Bill No. 883 prepared for House Ways and Means Committee, Legislative Reference

Library. This system would speed the collection and delivery of available fund income, by eliminating the 6 to 8 day delay incident to sending the payments by mail. Fiscal Note on Senate Bill No. 883, March 23, 1979, Bill File on Senate Bill No. 883, Legislative Reference Library.

Senate Bill No. 883 also added section 15.14 to the Education Code. This provision states in part:

> The State Board of Education is authorized and empowered to contract with the commercial bank or banks to serve both as a custodian of securities in which the state permanent school funds are invested and to lend these securities, under the conditions set out in Subsection (b) of this section, to securities brokers and dealers on short term loan.

You ask:

> Is it constitutional to lend securities owned by the permanent school fund in the manner and for the purpose authorized in this bill?

Section 15.14 of the Education Code authorizes the State Board of Education to enter into contracts with commercial banks whereby the banks could lend public school fund securities to securities brokers and dealers on a short-term basis. According to information submitted to this office, the contracting bank would physically transfer the securities to a broker in exchange for cash collateral of equal or greater value. See Educ. Code §15.14(b)(4). The broker would use the securities to cover delivery of securities bought from one customer and sold to another, where the seller was unable to produce the certificates on time for the transfer. The bank would invest the cash collateral and part of the interest on this investment would go to the permanent school fund. Section 15.14(b) of the Education Code sets out various requirements which the securities loan program must meet. According to the Fiscal Note attached to Senate Bill No. 883, this is a "risk-free" program. Fiscal Note to S.B. 883, March 23, 1979.

In our opinion, the provisions of section 15.14 which authorize the securities loan program violate article VII, sections 4 and 5 of the Texas Constitution. The public school fund is established by article VII, section 5 of the constitution, which provides as follows:

> The principal of all bonds and other funds, and the principal arising from the sale of lands hereinbefore set apart to the school fund, shall be the permanent school fund, and all the interest

derived therefrom and the taxes herein authorized and levied shall be the available school fund. The available school fund shall be applied annually to the support of the public free schools. And no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever; nor shall the same, or any part thereof ever be appropriated to or used for the support of any sectarian school; and the available school fund herein provided shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law.

Article VII, section 4 of the Texas Constitution provides that:

The lands herein set apart to the Public Free School Fund, shall be sold under such regulations, at such times, and on such terms as may be prescribed by law; and the Legislature shall not have power to grant any relief to purchasers thereof. The Comptroller shall invest the proceeds of such sales, and of those heretofore made, as may be directed by the Board of Education herein provided for, in the bonds of the United States, the State of Texas, or counties in said state, or in such other securities, and under such restrictions as may be prescribed by law; and the state shall be responsible for all investments. (Emphasis added).

Thus, investments of the public free school fund may be made only by the comptroller, subject to the direction of the Board of Education. In our opinion, the short term loan of permanent school fund securities in exchange for cash collateral which is invested, constitutes an investment of permanent school funds. Thus, this investment function can be performed only by the comptroller. Moreover, article VII, section 4 provides that "the state shall be responsible for all investments." In our opinion, the legislature may not constitutionally authorize the delegation of the investment function to a commercial bank.

You also ask:

Do sections 15.13 and 15.14 usurp the constitutional and statutory duties and responsibilities of the state treasurer in regard

> to his custodianship and accountability of securities owned by the permanent school fund?

We find no constitutional provision on the treasurer's duties with respect to the permanent school fund which would be violated by these provisions. See Attorney General Opinion MW-333 (1981).

The Board of Education may contract pursuant to section 15.13 with a commercial bank to receive payments of dividends and interest on all permanent fund securities. Section 15.13(a) contemplates the use of the commercial bank "lock-box" system whereby a bank near to the source of such payments acts as collecting agent. The fiscal agent mails such payments to a designated post office box and a local bank wire transfers them to the treasurer. The bank can provide this service without becoming custodian of the securities. Thus, section 15.13(a) does not conflict with the treasurer's statutory duty to be custodian of the securities enumerated in section 15.02(a)(5) of the Education Code.

Section 15.11(f) provides as follows:

> The state treasurer shall be the custodian of all securities enumerated in Subdivision (5) of Subsection (a) of Section 15.02 of this code and of such other securities as may be designated from time to time by the State Board of Education in which the school funds of the state have been or may hereafter be invested, and shall keep these securities in his custody until paid off, discharged, delivered as required by the State Board of Education, or otherwise disposed of by the proper authorities of the state....

This provision requires that the treasurer be custodian of the securities enumerated in section 15.02(a)(5) of the Education Code, i.e., "bonds of counties, school districts, incorporated cities or towns, road precincts, drainage, irrigation, navigation, and levee districts in Texas" subject to stated regulations. The Board of Education may designate other securities for the custodianship of the treasurer or may contract with a bank to act as custodian. See generally Attorney General Opinion MW-264 (1980) (Texas Housing Agency may appoint custodian of its funds other than treasurer).

It has been suggested that article IV section 25 of the Texas Constitution impliedly provides that only public officials may act as custodians of public funds. This provision reads as follows:

> The Legislature shall pass efficient laws facilitating the investigation of breaches of

trust and duty by all custodians of public funds and providing for their suspension from office on reasonable cause shown, and for the appointment of temporary incumbents of their offices during such suspension.

In our opinion, this provision does not bar the legislature from placing public funds and publicly owned securities with custodians other than public officers. It merely insures that the legislature has authority to suspend public officials who may have violated their trust as custodians of public funds. Tex. Const. art. IV, §25 (Interpretative Commentary). See also V.T.C.S. arts. 2525-2543d (statutes authorizing use of banks as state depository).

It is also suggested that article 2535, V.T.C.S., applies to contracts with commercial banks to serve as custodians of permanent school funds. Article 2535, V.T.C.S., provides that, with certain exceptions, state depositories shall remit free of charge withdrawals of state funds to the treasurer. In our opinion, this provision does not apply to contracts entered into pursuant to section 15.14 of the Education Code. The authority to contract with a commercial bank to serve as custodian of permanent school funds carries the implied authority to make reasonable and necessary expenditures for that purpose. The Board of Education is required to consider the reasonableness of the commercial banks charges for services rendered pursuant to sections 15.13 and 15.14, further indicating the legislature's intent that contracts for such services not be subject to article 2535, V.T.C.S.

In view of our answers to your first two questions, we need not answer your additional questions.

## S U M M A R Y

Sections 15.13 and 15.14, of the Texas Education Code, authorizing the Board of Education to contract with commercial banks to act as custodians of securities of the public school fund are constitutional, provided that all interest received therefrom is paid to the state. The provisions of section 15.14, authorizing the Board of Education to contract with commercial banks for the short-term loan of public school fund securities to security brokers and dealers, is unconstitutional in that it contravenes the

provisions of article VII, sections 4 and 5 of the
Texas Constitution.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General   .

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger